THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:11cv189

| SYNOVUS BANK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| ALEXANDER SCHAUR, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on the Defendant Alexander Schaur's Motion to Dismiss [Doc. 6].

## I. INTRODUCTION

This case involves a claim by Synovus Bank ("Bank") against the Defendant Alexander Schaur ("Schaur") to recover sums borrowed to finance the purchase of a lot in the Seven Falls Golf and River Club in Henderson County, North Carolina ("Seven Falls"). Schaur moves to dismiss the action, arguing that he has not had sufficient contacts with North Carolina to support the exercise of personal jurisdiction over him by this Court. [Doc. 6].

## II. STANDARD OF REVIEW

A plaintiff bears the burden of proving by a preponderance of the evidence that the Court has personal jurisdiction over a defendant. New

Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). The Court may also dispose of a Rule 12(b)(2) motion without an evidentiary hearing. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). When the Court undertakes to do so, a plaintiff need only set forth a *prima facie* case that the Court has personal jurisdiction over the defendant. Id. In determining whether a plaintiff has made this *prima facie* showing, the Court must construe the allegations in the complaint in the light most favorable to the plaintiff and must resolve all factual disputes in that party's favor. New Wellington, 416 F.3d at 294.

## III. FACTUAL BACKGROUND

Upon review of the entire record of this cause, the following is a recitation of the relevant facts.[1]

---

[1] After Schaur filed his Motion to Dismiss, the Court granted the Bank's request for leave to take certain jurisdictional discovery. [Doc. 11]. Subsequently, Schaur answered jurisdictional interrogatories propounded by the Bank and testified during a limited jurisdictional deposition. [Docs. 12-1, 12-2]. Additionally, Schaur has submitted an Affidavit in support of his Motion. [See Doc. 13-8]. Accordingly, the Court's recitation of the relevant facts is drawn not only from the Complaint but these subsequently filed materials as well.

### A. The Seven Falls Transaction

Schaur, a resident of Michigan, is one of five members of BSW-Investments, LLC ("BSW"), a South Carolina limited liability company. [Affidavit of Alexander Schaur ("Schaur Aff."), Doc. 13-8 at ¶¶ 1, 2; Deposition of Alexander Schaur ("Schaur Dep."), Doc. 12-2 at 41-42]. Neither Schaur nor BSW maintains an office within North Carolina, nor does either employ any persons within the State. [Schaur Aff., Doc. 13-8 at ¶ 3].

On or about June 9, 2007, Schaur executed on behalf of BSW a Reservation for Purchase and Sale Agreement ("Seven Falls Sales Agreement") with the developer of Seven Falls to purchase Lot 63. [Seven Falls Sales Agreement, Doc. 12-13].

On July 13, 2007, Schaur executed, in his individual name, a Consumer Loan Note/Security Agreement ("Note") in favor of the National Bank of South Carolina[2] ("NBSC") in order to finance the purchase of Lot 63 by BSW. [See Note, Doc. 12-14; Special Warranty Deed, Doc. 12-15]. Schaur executed the Note in the State of Michigan and delivered, via courier service, to NBSC at its address in Spartanburg, South Carolina. [Schaur Aff., Doc. 13-8 at ¶ 6].

---

[2]Plaintiff Synovus Bank is the successor in interest by merger and name change to NBSC. [Doc. 1 at ¶ 1]. Plaintiff is a Georgia state chartered bank with its principal place of business in Georgia. [Id.].

On July 24, 2007, Schaur executed, both individually and as a member of BSW, a Deed of Trust in favor of NBSC. [Id. at ¶ 8; Deed of Trust, Doc. 12-16]. Schaur executed the Deed of Trust in Oakland County, Michigan. [Schaur Aff., Doc. 13-8 at ¶ 9]. He delivered the Deed of Trust by mailing it to NBSC at its address in Spartanburg, South Carolina. [Id. at ¶ 10].

Thereafter, on May 20, 2009, Schaur entered into a renewal of the original Promissory Note ("Renewal Note"). [Id. at ¶ 11; Renewal Note, Doc. 12-17]. Schaur executed the Renewal Note in the State of Michigan and delivered the instrument, via courier service, to NBSC at its Spartanburg location. [Schaur Aff., Doc. 13-8 at ¶ 11]. At no time did Schaur enter the State of North Carolina for any purpose related to this transaction. [Id. at ¶ 12].

**B.  The Seven Falls Litigation**

On September 9, 2010, Schaur and others filed suit ("the South Carolina Action") against Synovus Financial Corp. d/b/a National Bank of South Carolina in the United States District Court for the District of South Carolina. [See Complaint, Doc. 12-18]. In that action, Schaur and the other plaintiffs alleged that they were fraudulently induced into applying for and purchasing certain lots within the Seven Falls subdivision. [Id. at ¶ 65]. Schaur and the

4

other plaintiffs voluntarily dismissed the South Carolina Action on November 15, 2010. [See Doc. 12 at 8].

On December 6, 2010, the Bank filed an action against Schaur to recover on the Note in Buncombe County Superior Court, File No. 10 CVS 6343 (the "North Carolina Collection Action"). [Complaint, Doc. 12-19].

On January 25, 2011, and before he filed an answer in the North Carolina Collection Action, Schaur and others filed a new case against Synovus Financial Corp and other entities in Muscogee County, Georgia ("the Georgia Action"). [Complaint, Doc. 12-20]. There, Schaur and the other plaintiffs made allegations similar to those in the South Carolina Action, namely, that they were fraudulently induced into applying for and purchasing certain lots within the Seven Falls subdivision. [Id. at ¶ 22].

On February 14, 2011, Schaur answered the North Carolina Collection Action. [Answer/Affirmative Defenses, Doc. 12-21]. Schaur's initial defense was a motion to dismiss on the basis that the court in the Georgia Action had "controlling jurisdiction." [Id. at 1].

On April 15, 2011, the Bank moved in the North Carolina Collection Action for an injunction barring Schaur from filing or prosecuting any more

5

lawsuits or claims concerning the subject matter of the North Carolina Collection Action. [Notice of Hearing and Motion for Injunction, Doc. 12-22].

On April 25, 2011, Schaur served a notice of hearing concerning the Motion to Dismiss that was included in his Answer and made a Motion to Stay the North Carolina Collection Action pending the resolution of the Georgia Action. [Notice of Hearing and Motion to Stay, Doc. 12-23].

On April 28, 2011, the Bank served a brief opposing Schaur's Motion to Dismiss and supporting the Bank's Motion for Anti-Suit Injunction. [Bank's Brief Opposing Defendants' Motions to Dismiss, Doc. 12-24]. The brief included argument regarding the state court's personal jurisdiction over Schaur. [Id. at 12-13].

The parties' motions were heard by the Hon. Mark E. Powell on May 2, 2011. In an Order dated June 14, 2011, Judge Powell granted the Bank's Motion for an Anti-Suit Injunction and denied Schaur's Motion to Dismiss and Motion to Stay, thereby compelling Schaur to bring all of his claims against the Bank in the North Carolina Collection Action and barring him from proceeding further with the Georgia Action. [Order, Doc. 12-25]. The state court specifically found that Schaur had submitted to the jurisdiction of the court and that the state court "[had] jurisdiction over the subject matter and the parties."

6

[Id. at ¶ 1]. Schaur did not appeal or otherwise challenge the anti-suit injunction, the denial of his motions, or the state court's specific finding of personal jurisdiction.

In the meantime, on June 9, 2011, the Georgia state court held a hearing on a motion by the Bank to dismiss the Georgia Action on the basis of *forum non conveniens*. That motion was granted by the Georgia state court on July 1, 2011. [Order, Doc. 12-26].

On July 28, 2011, the Bank voluntarily dismissed the North Carolina Collection Action. [See Doc. 12 at 11]. The following day, the Bank filed the present action in this Court, seeking to recover sums due under the Renewal Note. [Complaint, Doc. 1].

**C.    Schaur's Other Contacts with North Carolina**

Schaur, a native of Austria, came to the United States in 1996. [Schaur Dep., Doc. 12-2 at 8]. From 1996 to 2000, Schaur resided in Greenville, South Carolina with his wife at the time, Monica Wilk-Schaur. [Id. at 7; 12]. The Schaurs made occasional trips to North Carolina, including day trips to visit attractions such as the Biltmore House and Chimney Rock. [Id. at 14].

During one such trip to the Lake Lure area, the Schaurs saw advertising for lakefront real estate. [Id. at 13]. They drove to the property, met a sales

team, and decided to purchase a lot at Lake Adger. [Id. at 13; 14-15]. Prior to making an actual purchase, Schaurs visited the prospective property twice, at least once with sales agent Brent Murdoch ("Murdoch"). [Id. at 14-15].

In October 1998, the Schaurs purchased Lot 6 at Lake Adger. [Id. at 13-14; 16; Special Warranty Deed, Doc. 12-3]. The Schaurs appeared at the closing, which occurred in Tryon, North Carolina. [Schaur Dep., Doc. 12-2 at 17]. While they owned Lot 6, the Schaurs visited the property once or twice. [Id. at 18]. Schaur intended to build a "weekend hideaway" for himself and his wife on the property. [Id. at 21].

In the Spring of 2000, Schaur accepted employment with a French company and he and his wife left the United States to reside in France for a two-year work assignment. [Id. at 9, 11-13]. When they moved to France, the Schaurs decided to sell Lot 6 and use the proceeds to buy a condominium in France. [Id. at 20-21]. The Schaurs sold Lot 6 on October 27, 2000. [Id. at 19; General Warranty Deed, Doc. 12-5].

Some months later, Murdoch contacted the Schaurs in France and told them about the availability of another lot at Lake Adger. [Schaur Dep., Doc. 12-2 at 20, 21-22]. The Schaurs flew back to North Carolina to view the property, perhaps twice. [Id. at 20, 22]. In July 2001, the Schaurs purchased

8

Case 1:11-cv-00189-MR-DLH   Document 14   Filed 09/06/12   Page 8 of 18

Lot 13 at Lake Adger. [Id. at 21; Special Warranty Deed, Doc. 12-6]. The couple intended to build on the property, but this did not happen due to their divorce in 2003. [Schaur Dep., Doc. 12-2 at 25]. The Schaurs still own Lot 13 and plan to sell it after the real estate market improves. [Id. at 25].

In July or August of 2002, Schaur accepted a job with a German company and moved to Michigan. [Id. at 11]. At some point thereafter, Schaur contacted Murdoch and expressed interest in finding another lot to purchase. [Id. at 19, 27]. Murdoch located Lot 10 at Lake Adger and Schaur visited it once or twice before purchasing it in January 2003. [Id. at 25-27]. In March 2006, Schaur sold Lot 10 at Lake Adger for a profit. [Id. at 32].

## IV. DISCUSSION

In opposing Schaur's Motion to Dismiss, the Bank argues that the issue of personal jurisdiction previously was raised by the Bank and determined by the state court in the North Carolina Collection Action such that Schaur is now estopped from challenging it. The Bank further contends that Schaur has sufficient contacts with North Carolina to justify the exercise of personal jurisdiction in this case.

9

### A. Collateral Estoppel

Because the Court's jurisdiction is based upon the diversity of the parties, the law of North Carolina governs the application of collateral estoppel to this case. See St. Paul Fire & Marine Ins. v. Lack, 476 F.2d 583, 585 (4th Cir. 1973). "Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." Lancaster v. N.C. Dep't of Env't & Natural Res., 187 N.C. App. 105, 111, 652 S.E.2d 359, 363 (2007) (citations omitted), disc. rev. denied, 362 N.C. 236, 659 S.E.2d 734 (2008).

In order for collateral estoppel to apply, the prior proceeding must have resulted in a final judgment on the merits. McDonald v. Skeen, 152 N.C. App. 228, 230, 567 S.E.2d 209, 211 (2002) ("The elements of collateral estoppel ... are as follows: (1) a prior suit resulting in a final judgment on the merits; (2) identical issues involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined."), disc. rev. denied, 356 N.C. 437, 571 S.E.2d 222 (2002). Here, however, there was no "final judgment on the merits" in the North Carolina Collection Action. As conceded by the Bank, the North Carolina Collection Action was voluntarily

dismissed without prejudice. As such, the doctrine of collateral estoppel is not applicable to this case. See Estate of Means ex rel. Means v. Scott Elec. Co., 207 N.C. App. 713, 718, 701 S.E.2d 294, 298 (2010) (concluding that doctrine of collateral estoppel not applicable where prior suit was dismissed without prejudice).

Even if the state court's order could be considered a final judgment on the merits, the issues in the present case are not the same as those litigated in the North Carolina Collection Action. See McDonald, 152 N.C. App. at 230, 567 S.E.2d at 211 (requiring that the issue "was actually litigated in the prior suit and necessary to the judgment"). In the North Carolina Collection Action, the Bank sought to collect upon the original Note executed by Schaur on July 13, 2007. By contrast, in the present case, the Bank seeks to collect upon the Renewal Note, which was executed by Schaur on May 20, 2009. These are separate instruments, executed at different times under different conditions with different principal amounts and different rates of interest. Thus, any issue of personal jurisdiction that was decided by the state court would have related only to the original Note and not the Renewal Note, which is the only instrument at issue in the present case.

11

For all of these reasons, the Court concludes that the doctrine of collateral estoppel does not preclude Schaur from challenging the Court's exercise of personal jurisdiction in this case.

**B.     Sufficient Contacts to Establish Personal Jurisdiction**

In order to determine whether the Bank has satisfied its burden in showing a *prima facie* case of personal jurisdiction, the Court must engage in a two-step analysis. First, the Court must determine whether the exercise of jurisdiction over the nonresident defendant is authorized by North Carolina's long-arm statute. Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). Next, the Court must consider whether the exercise of jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. Id.

The North Carolina long-arm statute provides, *inter alia*, for the exercise of personal jurisdiction over any validly-served defendant who "[i]s engaged in substantial activity within [North Carolina] . . . ." See N.C. Gen. Stat. § 1-75.4(1)(d). "Like those of many other states, North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause. Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has

such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (citations omitted).

"'The constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum contacts' in the forum state.'" Asahi Metal Indus. v. Superior Court of Cal., 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "Minimum contacts exist where the defendant purposefully directs its activities toward the residents of the forum." Ellicott Mach., 995 F.2d at 477. Minimum contacts can provide the basis for personal jurisdiction, however, only if the exercise of such jurisdiction would comport with the notions of "fair play and substantial justice." Id. at 477 (citation omitted).

Personal jurisdiction may be general or specific. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. See ALS

13

Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). General jurisdiction, on the other hand, may be exercised even when an action does not arise out of the non-resident defendant's contact with the forum state, so long as the non-resident defendant has engaged in "continuous and systematic" contact with the forum state. See Helicopteros, 466 U.S. at 414 & n.9, 104 S.Ct. 1868. Here, the Bank contends that Schaur was engaged in such "continuous and systematic" activities in North Carolina as to subject himself to the Court's general jurisdiction. Alternatively, the Bank argues that specific personal jurisdiction may also be exercised over him.

The Bank's asserted cause of action -- recovery of sums owed on the Renewal Note -- does not arise out of Schaur's contacts with the forum state. The record reflects that the Defendant is a resident of Michigan, while NBSC operated in South Carolina. The Defendant executed the Renewal Note in the State of Michigan and delivered the instrument, via courier service, to NBSC at its Spartanburg, South Carolina location. At no time did the Defendant enter the State of North Carolina for any purpose related to the transaction that is the subject of the Plaintiff's Complaint.[3]

---

[3]The Bank cites to allegations in the complaints filed in the South Carolina and Georgia Actions that appear to suggest that at least some of the plaintiffs in those

14

The only connection that this transaction appears to have to the State of North Carolina is that the Renewal Note was secured by a Deed of Trust on property located in this State. Had the Bank chosen to pursue foreclosure on the Deed of Trust, and subsequently brought suit against Schaur for any deficiency, the location of the subject property within the forum state might be significant. The Bank, however, chose not to pursue foreclosure on the Deed of Trust, electing instead to bring suit solely on the Renewal Note, an instrument executed by Schaur in Michigan and delivered to the Bank in South Carolina. Under the action, as pled by the Bank, the real property located in North Carolina simply is not at issue. As such, Schaur's execution of the Deed of Trust encompassing the North Carolina property does not constitute the minimum contacts required to establish specific personal jurisdiction in this case.

Having determined that Schaur's contacts with the forum state fail to establish specific personal jurisdiction, the Court turns to the issue of whether he has maintained continuous and systematic contacts with the State of North

---

actions came to North Carolina to attend various marketing events allegedly hosted by NBSC and the Seven Falls developer prior to purchasing lots at Seven Falls. [Doc. 12 at 8-9]. In both his deposition and affidavit testimony, however, Schaur testified that these allegations did not apply to him, and that he had never entered the State of North Carolina for any reason related to the execution of the Renewal Note. [Schaur Aff., Doc. 13-8 at ¶ 12; Schaur Dep., Doc. 12-2 at 51].

15

Carolina such that the exercise of general jurisdiction would be warranted. Upon careful review of the record, the Court concludes that he has not.

In arguing for the exercise of general personal jurisdiction, the Bank focuses on Schaur's history of real estate transactions in North Carolina and his actions taken in defense of the North Carolina Collection Action. [Doc. 12 at 19-20]. The mere ownership of property, however, without more, is insufficient to create general personal jurisdiction over a non-resident. See Shaffer v. Heitner, 433 U.S. 186, 207-08, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); Bruggerman v. Meditrust Acquisition Co., 138 N.C. App. 612, 616, 532 S.E.2d 215, 218 (2000); Fraser v. Littlejohn, 96 N.C. App. 377, 386-87, 386 S.E.2d 230, 236 (1989); Georgia R. R. Bank & Trust Co. v. Eways, 46 N.C. App. 466, 470-471, 265 S.E.2d 637, 641 (1980). While the Bank contends that Schaur "repeatedly sought to benefit financially from buying and selling real estate in North Carolina," [Doc. 12 at 20], the record indicates that over a period of eight years, Schaur purchased a total of three lots within North Carolina, two of which were purchased for the purpose of building a vacation home (which was never built) and one of which was purchased for investment purposes and subsequently sold. Schaur currently retains only one unimproved parcel of real property in North Carolina. Thus, contrary to the

Bank's argument, Schaur's real estate activity was not so extensive and systematic as to justify the exercise of general jurisdiction over him in this case. See Eways, 46 N.C. App. at 470-71, 265 S.E.2d at 641.

Similarly, Schaur's participation in the North Carolina Collection Action does not warrant the exercise of general jurisdiction over him. In that Action, Schaur challenged the state court's exercise of jurisdiction and sought to dismiss the action or stay it pending resolution of the litigation pending in the Georgia state court. These defensive legal maneuvers do not constitute contacts of a "continuous and systematic" nature with the forum state such that general jurisdiction is created. See Helicopteros, 466 U.S. at 414, 104 S.Ct. 1868.[4]

For all of these reasons, the Court concludes that there is a lack of minimum contacts sufficient to warrant the exercise of personal jurisdiction over the Defendant pursuant to North Carolina's long-arm statute. Accordingly, the Defendant's Motion to Dismiss is granted.

---

[4]The Bank argues that other factors, such as the convenience of the forum as well as the forum's interest in adjudicating the parties' dispute, support the exercise of personal jurisdiction over Schaur. While such factors are sometimes relevant to determining the "overall reasonableness" of jurisdiction, they "are generally addressed only after it has been decided that a defendant purposefully established minimum contacts with the forum State." Chung v. NANA Dev. Corp., 783 F.2d 1124, 1129-30 (4th Cir. 1986). Because the Court has concluded that personal jurisdiction here fails the threshold test of "minimum contacts," the Court need not separately consider these arguments.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss [Doc. 6] is **GRANTED**, and this matter is **DISMISSED** for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Signed: September 6, 2012

Martin Reidinger
United States District Judge